UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUTHER GRAHAM,<br><br>                *Plaintiff*,<br><br>v.<br><br>MONMOUTH COUNTY BUILDINGS AND GROUNDS, et al.,<br><br>                *Defendants*. | **MEMORANDUM AND ORDER**<br><br>Civil Action No.:<br>3:16-cv-1578-PGS-LHG |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court on Plaintiff's Motion to Enforce Settlement. (ECF No. 142). The putative settlement underlying this motion concerned two cases involving the same parties and alleging employment discrimination. Although the putative settlement applied to both cases, the cases were never consolidated. As a result, this motion is docketed in both files, and this memorandum applies to both cases.

I.

      This employment discrimination matter entails a retaliation claim brought by the Plaintiff, Luther Graham, against Defendants, Monmouth County Division of Buildings and Grounds; Robert W. Compton, Superintendent of the Buildings and Grounds Division; and David Krzyzanowski, Supervisor of General Services for the Buildings and Grounds Division (collectively, "Defendants")[1].

---

[1] Defendants Compton and Krzyzanowksi did not file opposition briefs.

1

Plaintiff was employed with the County from 1994 until his termination in June 2019[2]. The only issue remaining for trial in this case is whether Defendants retaliated against Plaintiff in 2016 by failing to hire him for a crew supervisor position within the County's Buildings and Grounds Division. (*See* Final Pretrial Order, ECF No. 94).

A jury trial was tentatively scheduled to begin on April 6, 2020. (*See* Order, ECF No. 122). Accordingly, before trial was to commence, the Court had planned to hear oral argument on the parties' motions in limine as well as Defendants' summary judgment motions on Wednesday, March 11, 2020. Evidently, however, the parties had been engaged in settlement discussions during the days leading up to the March 11 motions hearing.

According to the parties, on Friday, March 6, 2020, the parties participated in a day-long mediation. (Pl.'s Mot. to Enforce Settlement, ECF No. 142-1); (Defs.' Opp'n Br. 1, ECF No. 145). Defendants allege that before the mediation began, the mediator explained the ground rules, one of which was that any settlement agreement would have to be approved by the Board of Chosen Freeholders of Monmouth County. (Declaration of Douglas J. Kovats ¶ 3, ECF No. 145-1). Defendants also allege that before any settlement could be presented to the Board of Chosen Freeholders, Defendants' counsel was required to discuss any potential settlement with Monmouth County Counsel, Michael Fitzgerald, Esq.[3] (Defs.' Opp'n Br. 1).

At the mediation, though the parties did not reach an agreement, Defendants conveyed an offer to Graham, which was left open until the close of business the following Tuesday, March 10.

---

[2] In the related case, Civil Action No. 19-cv-18763, which is still in its early pleading stages, Plaintiff alleges that Defendants retaliated and discriminated against him when they terminated him in June 2019.

[3] Mr. Fitzgerald is an attorney for the County, but is not counsel of record in these cases.

(*See* Pl.'s Mot.). Settlement discussions continued on Tuesday, March 10, and that evening the parties reached a putative settlement agreement. (Defs.' Opp'n Br. 1).

This putative agreement was memorialized in an email[4] that Plaintiff's counsel, Christine E. Burke, Esq., sent that same evening to the County's counsel, Douglas J. Kovats, Esq. In the email, Ms. Burke mentioned the dollar amount Plaintiff would receive as a result of the settlement, the logistics of how the money would be issued, and information concerning Plaintiff's health insurance and pension benefits. (Pl.'s Ex. A). Notably, Ms. Burke also wrote the following sentence: "Please be advised when you think this will be submitted to the freeholders [Monmouth County's Board of Chosen Freeholders] for formal approval." (*Id.*).

On the morning of Wednesday, March 11, 2020 (the following day), Ms. Burke notified this Court's Chambers that the motions hearing would not be necessary because the parties had reached a possible settlement. Ms. Burke's representation to the Court was also memorialized in a letter to this Court filed that same morning and jointly on behalf of both parties:

> I represent the Plaintiff in the above-referenced matters. I write jointly respecting the current status of these cases. The Parties have reached a settlement *in principal*, but are still in the process of discussing various items that need to be confirmed before they can formalize an agreement. Therefore, the Parties respectfully request the current oral argument(s) scheduled for this afternoon be adjourned. The parties will submit a request for a 60 Day Order as soon as able. If Your Honor has any questions or concerns related to this correspondence, please do not hesitate to contact me.

(March 11, 2020 Letter to Court, ECF No. 140) (emphasis added).

Moreover, that same morning, Ms. Burke contacted the Chambers of Lois H. Goodman, U.S.M.J., the magistrate judge assigned to the case. After a representative from Judge Goodman's

---

[4] Because the email contains confidential settlement information, Plaintiff's motion to seal the email was granted. (ECF No. 152). Still, the Court will discuss the contents of the email pertinent to the disposition of Plaintiff's present motion.

Chambers asked Ms. Burke about a possible settlement, Ms. Burke responded, via email, with the following:

> Ms. Fitzgerald,
>
> Thank you for your email. Mr. Graham was a county employee, and therefore his pension and continued health insurance benefits (upon retirement) are governed by the County of Monmouth's Employee Guide to Policies, Benefits and Services. I was working with Defense Counsel to confirm his actual service date within the County so that Mr. Graham has a full understanding of what benefits he is/is not contractually entitled to going forward, and therefore any necessary carve out language for the agreement . . . .

(Burke email to Goodman Chambers, Mar. 10, 2020, Pl.'s Ex. B, ECF No. 142-3).

Mr. Kovats also explained in an email to Judge Goodman's Chambers that same morning that "we [Defendants] are agreed on a global settlement of Mr. Graham's claims against Monmouth County and it's [sic] employees . . . ." (Kovats email to Goodman Chambers, March 10, 2020, Pl.'s Ex. C, ECF No. 142-4).

Cautious about the prospect of a settlement, this Court arranged for a telephone conference with the parties later that day (March 11). During the telephone conference, the parties informed this Court that they had reached a tentative agreement, but were still working out a few items, including health insurance payouts and approval by the Board of Chosen Freeholders:

> MS. BURKE: I was speaking with Mr. Kovats before we got on the phone with the Court, we're waiting on information from the county regarding [Plaintiff's] official date of employment that would actually count toward his eligibility for health insurance benefits under a particular plan. *So that's something that we need to resolve* so that there's no debate about whether or not there's a carve-out in the agreement for his ability to seek health insurance benefits. And that's what's holding things up, and *also the freeholders have to approve any settlement and I don't know when that executive meeting will be held.*
>
> THE COURT: Okay.
>
> MR. KOVATS: Your Honor, as to those two issues, I anticipate that as to the first issue I will have confirmation before the week is out; and as to the second issue

> probably midway through next week. I believe -- my understanding is there's going to be an executive session upon which this topic can be discussed. I don't anticipate any difficulties in having the settlement approved, *I just need to formally have them [the Board of Chosen Freeholders] know it's there so that they're not surprised*.

(Teleconference Transcript 4:4-24, March 11, 2020) (emphasis added).

Sometime after the telephone conference, the Board of Chosen Freeholders ultimately declined to approve the settlement. On March 20, 2020, Mr. Kovats sent an email to Ms. Burke as well as counsel for Defendants Compton and Krzyzanowski regarding same:

> Good afternoon;
> I have just concluded a telephone call with County Counsel Michael Fitzgerald . . . County counsel advised that after meeting with the Monmouth County Freeholders, the Freeholders rejected the settlement. As I had represented to you and the Court it was not my understanding that the settlement would be rejected. I think it would be best to advise the Court sooner rather than later. Even in light of this information I expect that you will continue to want a response, I anticipate that receiving a formal response to the Health Benefit question raised will take more time.

(Kovats email to counsel, March 20, 2020, Ex. D. to Pl.'s Surreply Br., ECF No. 154-1).

As indicated above, Mr. Kovats was confident that the Board of Chosen Freeholders would approve the settlement; yet, according to Mr. Kovats, such approval was never a guarantee. (*See* Kovats Decl. ¶ 5). Plaintiff filed the present motion to enforce what he perceived as a final settlement among the parties.

## II.

Courts treat a motion to enforce a settlement under the same standard as a motion for summary judgment[5], since "the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *G.I. Sportz, Inc. v. Valken, Inc.*, 1:16-cv-07170-

---

[5] Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see* Fed. R. Civ. P. 56.

5

NLH-KMW, 2018 U.S. Dist. LEXIS 105317, at *5-6 (D.N.J. June 22, 2018) (citing *Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010)).

A settlement agreement is a contract like any other contract, and therefore breaches of settlement obligations are governed by state contract law. *Jacob's Limousine Transp., Inc. v. City of Newark*, 688 F. App'x 150, 151 (2017); *see Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (citation omitted). Thus, an agreement settling a lawsuit may be considered a contract, absent fraud, duress, or other considerations. *Pote v. Pine Hill Mun. Utils. Ass'n*, DOCKET NO. A-4639-11T2, 2013 N.J. Super. Unpub. LEXIS 1669, at *3 (N.J. Super. Ct. App. Div. July 5, 2013) (citing *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (N.J. Super. Ct. App. Div.), *cert denied*, 94 N.J. 600 (1983)).

Under New Jersey law, to prevail on a breach of contract claim, a party must prove (1) the existence of valid contract between the parties, (2) the opposing party's failure to perform a defined obligation under the contract, and (3) the breach caused the claimant to sustain damages. *SSC Serv. Corp. v. Turen*, Civ. No. 2:15-cv-4160-KM-MAH, 2018 U.S. Dist. LEXIS 144881, at *21 (D.N.J. Aug. 27, 2018) (citing *EnviroFinance Grp., LLC v. Envtl Barrier Co.*, LLC, 440 N.J. Super. 325, 345 (N.J. Super. Ct. App. Div. 2015)).

As such, a contract is formed where there is an offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. *G.I. Sportz*, 2018 U.S. Dist. LEXIS 105317, at *5; *see Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992). Furthermore, a contract is enforceable if the parties agree on essential terms and manifest an intention to be bound by those terms. *G.I. Sportz*, 2018 U.S. Dist. LEXIS 105317, at *5; *see United States v. Lightman*, 988 F. Supp. 448, 458 (D.N.J. 1997). Under New Jersey law, as long as the parties orally agree on the essential terms, a contract is formed; therefore, a court can enforce an oral settlement agreement even if a writing never materializes. *U.S. Sewer*

*& Drain, Inc. v. Earle Asphalt Co.*, Civil Action No. 15-1461 (AET), 2016 U.S. Dist. LEXIS 82792, at *21-22 (D.N.J. June 22, 2016) (citations omitted).

The party seeking to enforce the alleged settlement agreement bears the burden of proving the existence of the agreement under contract law. *G.I. Sportz*, 2018 U.S. Dist. LEXIS 105317, at *5. A court must grant a motion to enforce a settlement agreement if it finds that a defendant breached a duty created by a binding agreement and that the breach caused the plaintiff to suffer damages. *Jacob's Limousine*, 688 F. App'x at 151-52; *see Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).

Although New Jersey public policy favors settlement of litigation, *see Nolan*, 120 N.J. at 472, a settlement "should not be enforced where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." *Fogarty v. Household Fin. Corp. III*, Civil No. 14-4525 (RBK/JS), 2018 U.S. Dist. LEXIS 143551, at *8 (D.N.J.), *adopted by*, 2018 U.S. Dist. LEXIS 143187 (D.N.J. Aug. 22, 2018) (citation and quotation marks omitted).

III.

Moreover, under New Jersey law, "unless an attorney is specifically authorized by the client to settle a case, the consent of the client is necessary." *G.I. Sportz*, 2018 U.S. Dist. LEXIS 105317, at *8 (quoting *Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 475 (N.J. Super. Ct. App. Div. 1997)). Settlement stipulations made by attorneys when acting within the scope of their authority are enforceable against their clients. *Jennings v. Reed*, 381 N.J. Super. 217, 230 (N.J. Super. Ct. App. Div. 2005). New Jersey law recognizes two types of authority to settle a lawsuit which would bind a client: actual, either express or implied, and apparent authority. *Burnett v. Cnty. of Gloucester*, 415 N.J. Super. 506, 513 (N.J. Super. Ct. App. Div. 2010).

Further, in the context of a governmental body, "[g]overnmental bodies must act by formal action not only with respect to contracts, but also as to giving consent to the settlement of litigation." *Jersey City v. Roosevelt Stadium Marina*, 210 N.J. Super. 315, 328 (N.J. Super. Ct. App. Div. 1986) (internal citations omitted); *see Petit-Clair v. Hoffman*, Civ. No. 2:14-07082, 2017 U.S. Dist. LEXIS 101311, at *6 (D.N.J. June 29, 2017) (indicating that a municipal government can only act by formal action at a public meeting, which includes consent to litigation settlements); *Advanced Enters. Recycling, Inc. v. Gloucester County Improvement Auth.*, DOCKET NO. A-2396-14T1, 2016 N.J. Super. Unpub. LEXIS 1999, at *13 (N.J. Super. Ct. App. Div. Aug. 31, 2016) (governmental bodies enter into contracts only "by formal action[.]"); *see also* N.J. Stat. Ann. § 40A:5-17(a) (requiring that municipal and county governmental bodies must approve payment of all claims).

When dealing with a governmental body in the context of a settlement, the parties "are charged with knowledge of the law and the necessity for official public action." *Roosevelt Stadium Marina*, 210 N.J. Super. at 331.

IV.

In the instant case, because there are factual disputes regarding the validity of the alleged settlement agreement, Plaintiff's motion must be denied. The conduct of the parties throughout the settlement discussions fails to demonstrate that the parties reached a binding settlement.

First, there are factual disputes about whether there was a meeting of the minds among the parties, as the parties had not yet agreed upon the essential terms of the agreement. For instance, in Ms. Burke's March 11, 2020 letter to this Court, she indicated that the parties had reached a settlement "in principal", but were still finalizing other terms of the settlement. (March 11, 2020

8

Letter to Court).  Ms. Burke's characterization of the agreement suggests that there remained unresolved items that the parties needed to address before a settlement could be agreed upon.

Indeed, Ms. Burke indicated on separate occasions that the parties had not yet agreed on the details of Plaintiff's health insurance and pension distributions.  For example, in Ms. Burke's email to Judge Goodman's Chambers, she stated that the parties were still figuring out Plaintiff's eligibility for benefits, "and therefore any necessary carve out language for the agreement . . . ."  (Burke email to Goodman Chambers, March 10, 2020).  Ms. Burke indicated same to this Court during the teleconference, where she stated that the parties were "waiting on information from the county regarding [Plaintiff's] official date of employment that would actually count toward his eligibility for health insurance benefits under a particular plan.  So that's something that we need to resolve . . . And that's what's holding things up . . . ."  (Teleconference Transcript 4:6-13).

Accordingly, the parties' "stipulated agreement [was] incomplete in some of its material and essential terms," *Fogarty,* 2018 U.S. Dist. LEXIS 143551, at *8, namely the health insurance and pension benefits.

Second, even if the parties agreed on essential settlement terms, Defendants contend that the parties still had not executed a binding settlement agreement because the parties expressly understood that any proposed settlement was conditioned upon approval by the Board of Chosen Freeholders of Monmouth County, and that the County's counsel, Mr. Kovats, did not have authority to settle the case.  This Court agrees.

The Courts finds the *Roosevelt Stadium Marina* case, cited *supra*, instructive on this issue.  In that case, the City of Jersey City sued the defendants over alleged breaches of lease obligations related to certain properties.  *Roosevelt Stadium Marina*, 210 N.J. Super. at 318-19.  Settlement negotiations eventually ensued, and proposed drafts of a settlement agreement were exchanged.

*Id.* at 319. Counsel for the defendants also drafted a proposed consent order, which recited that all parties had consented to the settlement. *Id.* at 320-21.

Both parties were well aware, however, that Jersey City's Municipal Council had to approve a settlement between the parties before a judge could sign the consent order. *Id.* at 320-21. In fact, an attorney for the defendant wrote a letter to the presiding judge in that case indicating that the Municipal Council had not consented to the settlement and that there were difficulties in ratifying the settlement. *Id.* at 321. Thus, it was clear to defendant's counsel that Jersey City's attorneys had not obtained municipal approval of the settlement and that the Municipal Council had not consented "in any fashion" to the settlement. *Id.* at 322.

The Appellate Division overturned the trial judge's decision approving the consent order, noting that "[g]overnmental bodies must act by formal action not only with respect to contracts, but also as to giving consent to the settlement of litigation." *Id.* at 328 (internal citations omitted). The court held that the consent order was a nullity because the record reflected that the Municipal Council had not approved the settlement and that both parties were keenly aware that the Municipal Council was required to approve the settlement. *Id.* at 326-27.

Similarly, in the present case, the record before the Court fails to demonstrate that the Board of Chosen Freeholders approved or consented in any way to any alleged settlement. Like the defendant's counsel in *Roosevelt Stadium Marina*, who was aware that the municipal body had to approve the settlement in that case, here, Ms. Burke was mindful of the fact that any potential settlement agreement was conditioned upon approval by the Board of Chosen Freeholders. This is evidenced by Ms. Burke's email to Defendants' counsel, where she wrote, "Please advise when you think this will be submitted to the freeholders for *formal approval*." (Pl.'s Ex. A, ECF No. 144) (emphasis added). Ms. Burke also informed this Court during the March 11 teleconference

that "the freeholders have to approve any settlement and I don't know when that executive meeting will be held." (Telephone Conference Call Transcript 4:13-14).

Therefore, Plaintiff's familiarity with the County's approval process demonstrates that any settlement negotiations in which the parties engaged were not binding on the Defendants, since the Freeholders had to, but in this case did not, approve the settlement.

Moreover, in support of his argument that Mr. Kovats had authority to bind the County, Plaintiff relies principally on the case *Newark Branch, NAACP v. West Orange*, 786 F. Supp. 408 (D.N.J. 1992). The facts in *Newark Branch, NAACP*, however, are distinguishable from the facts currently before this Court and thus lend little support to Plaintiff. For one, *Newark Branch, NAACP* involved a consent decree, which is a negotiated agreement entered as a court order and which requires judicial approval. *See Newark Branch NAACP*, 786 F. Supp. at 416. A settlement agreement, on the other hand, and which Plaintiff claims was reached in this case, is an out-of-court resolution which entails the requirements of a contract, as described above.

Also, the township's attorney in *Newark Branch, NAACP* had engaged in extensive, months-long discussions with West Orange's Town Council and Mayor about the terms of the consent decree, and even exchanged drafts of the consent decree. *Newark Branch, NAACP*, 786 F. Supp. at 417-18. Conversely, in the instant case, there is scant evidence that Mr. Kovats engaged in detailed discussions with the Board of Chosen Freeholders regarding the potential settlement, or that Mr. Kovats provided drafts of a proposed settlement to the Freeholders. Furthermore, unlike the township's attorney in *Newark Branch, NAACP*, there is no evidence to suggest that it was Mr. Kovats's practice to settle cases without the approval of the Board of Freeholders.

Plaintiff hones in on the email Mr. Kovats sent on March 20, 2020, where he stated, in part, "As I had represented to you and the Court it was not my understanding that the settlement would

11

be rejected." (Kovats email, March 20, 2020). Ms. Burke construes Mr. Kovats' statement to mean that, based on Mr. Kovats' "understanding" that the Board of Chosen Freeholders would likely approve the settlement, Mr. Kovats inherently possessed authority (either actual or implied) to settle the matter on behalf of the County. (*See* Pl.'s Surreply Br. 3-4, ECF No. 154). Despite Ms. Burke's interpretation of Mr. Kovats' settlement authority, it appears that Mr. Kovats was only expressing his belief of the likelihood that the County would approve the settlement, not whether he was provided with authority to settle the matter on behalf of the County. Thus, based on Mr. Kovats's representations, settlement of this matter was never a guarantee.

Lastly, Plaintiff argues that even if the Board of Chosen Freeholders had to approve the settlement, his motion should nonetheless be granted against individual Defendants Compton and Krzyzanowksi because they failed to oppose Plaintiff's motion, and thus impliedly consented to the settlement terms. Plaintiff's argument, however, fails because any settlement reached would have collectively bound all defendants, regardless of the mechanics of how any settlement payment would be distributed. In addition, as explained above, no settlement was reached; therefore, there is no agreement to which Compton and Krzyzanwoski would be bound.

In sum, the facts demonstrate that are disputed issues of material fact about whether the parties entered into a valid settlement agreement. Accordingly, Plaintiff's motion must be denied.

## ORDER

This matter, having come before the Court on Plaintiff's' Motion to Enforce Settlement (ECF No. 142), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 6th day of May, 2020,

**ORDERED** that Plaintiff's motion to enforce settlement (ECF No. 142) is **DENIED**; and it is further

**ORDERED** that Defendant Robert Compton's motion for leave to file a surreply brief (ECF No. 147); Monmouth County's motion for leave to file a surreply brief (ECF No. 148); and Defendant Krzyzanowski's motion for leave to file a surreply brief (ECF No. 150) are **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's motions to strike Compton's and Krzyzanowski's motions for leave to file surreply briefs (ECF Nos. 149, 151) are **DENIED** as moot.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.
