UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUTHER GRAHAM,<br><br>                   *Plaintiff*,<br><br>v.<br><br>MONMOUTH COUNTY BUILDINGS AND GROUNDS, et al.,<br><br>                   *Defendants*. | Civil Action No.:<br>3:16-cv-01578-PGS-LHG<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

      This employment discrimination matter comes before the Court on Defendants' third motions for summary judgment. (ECF Nos. 118, 120). This Court heard oral argument on June 8, 2020. Because there remain genuine disputes of material fact surrounding the selection process for the Crew Supervisor position, Defendants' motions are denied.

I.

      The facts of this case have been set forth at length in the Court's prior summary judgment opinions, (*see* ECF Nos. 56, 84), and the Court incorporates those facts herein. As such, the Court will discuss only the facts and procedural history necessary for resolution of the current motions.

      Luther Graham ("Plaintiff" or "Graham") is the Plaintiff in this case. (Pl.'s Counter Statement of Material Facts ("PCSOMF") ¶ 1, ECF No. 137-1). The Defendants are the following: Monmouth County Division of Buildings and Grounds (the "County"); Robert W. Compton ("Compton"), Superintendent of the Buildings and Grounds Division; and David Krzyzanowski ("Krzyzanowski"), Supervisor of General Services for the Buildings and Grounds Division. (*See* Compton and County Statement of Material Facts ("SOMF") ¶ 1, ECF No. 118-3); (Krzyzanowski Statement of Material Facts ("SOMF") ¶ 1, ECF No. 120-2). At all relevant times, Graham was

1

employed by the County, and Compton and Krzyzanowski were among his general supervisors; Aaron Kinney, a non-party, was Graham's direct supervisor.

Graham began employment with the County in 1994 in the Division of Employment and Training. (Compton and County SOMF ¶ 2). On March 7, 2005, Graham became an Electrician within the County's Buildings and Grounds Division/Trades Area. (*Id.*). He was promoted to "Senior Electrician" in August 2007 and maintained that position until mid-2019. (*Id.* ¶ 2). Between February 2015 and October 2015, Graham filed numerous internal complaints with the County's Human Resources Department alleging a variety of unjust treatment. (*See id.* ¶ 3). The County responded, in writing, to each of his complaints, but Graham was nonetheless dissatisfied with the County's responses. (Pl.'s Response to Compton and County SOMF ¶ 4, ECF No. 137-2). Plaintiff alleges that soon after he filed his internal complaints, Defendants began taking retaliatory and hostile actions against him, specifically in the form of denying him job opportunities. (*Id.*).

Notably, on or about March 8, 2016, the County posted a job vacancy for the position title "Crew Supervisor Building Maintenance Worker[1]" [hereinafter the "Crew Supervisor position"]. (Compton and County SOMF ¶ 5). A few days after the position was posted, Graham submitted an application for the position. (PCSOMF ¶ 3). Compton was the sole interviewer for the Crew Supervisor position and interviewed twelve applicants, including Graham and Robert Briscoe, another employee. (Compton and County SOMF ¶ 7); (PCSOMF ¶ 6).

Although Krzyzanowski's name was listed on the job posting as the interviewing manager[2], Krzyzanowski did not interview candidates for the position. (Krzyzanowski SOMF ¶ 3).

---

[1] *See* Crew Supervisor Job Posting, Ex. D to Roberts Decl., ECF No. 118-2.
[2] *See id.*

2

According to Krzyzanowski, the only discussion he had with anyone at the County concerning the Crew Supervisor position was sometime in early 2016, when Briscoe approached Krzyzanowski to inquire about whether Briscoe should apply for the position, to which Krzyzanowski recommended that Briscoe apply.  (Krzyzanowski SOMF ¶ 4).  Krzyzanowski alleges that he suggested that Briscoe apply for the position so that Briscoe can obtain interviewing skills.  (*Id.*).

The interview for the Crew Supervisor position consisted of twenty-one questions, and each question was accorded a percentage based on its importance.  (Compton and County SOMF ¶ 7).  The interview questions covered topics such as requisite work experience, teamwork, customer service, and administrative/clerical skills.  (*Id.*).  Each applicant's response to a question was scored on a numerical scale of 0-3 (0 being the lowest, 3 being the highest), and Compton recorded the scores on each applicant's interview score sheet at the completion of each question.  (*Id.*).

Compton interviewed Graham on March 22, 2016.  (*Id.* ¶ 5).  Graham received an overall score of 1.0 and ranked tenth out of the twelve applicants.  (*Id.* ¶ 9).  Robert Briscoe, on the other hand, scored a 2.47 and was selected for the Crew Supervisor position.  (*Id.* ¶ 8).  The County and Compton allege that based on Briscoe's interview and qualifications, he was "the best candidate" for the position.  (*Id.*).

Graham sued Defendants, alleging, *inter alia*, that he was not selected for the Crew Supervisor position, despite his qualifications and experience, because of his prior internal complaints of discrimination to the County.  As such, Plaintiffs brings claims of retaliation and retaliatory hostile work environment against Defendants under 42 U.S.C. § 1981 (via § 1983), the New Jersey Law Against Discrimination (NJLAD), and Title VII of the Civil Rights Act of 1964.

Accordingly, a key issue for trial concerns Graham's application, interview for, and failure to obtain the Crew Supervisor position.

II.

Plaintiff initiated this lawsuit on March 22, 2016. (*See* ECF No. 1). He initially alleged racial discrimination, retaliation, and hostile work environment claims against Defendants based on various events he allegedly experienced throughout his employment with the County. (*See* First Am. Compl. ¶¶ 17-31, ECF No. 22). Plaintiff voluntarily dismissed his claims for racial discrimination and hostile work environment based on race. (ECF No. 56). The following ensued.

A. <u>First Summary Judgment Motion and Motion for Reconsideration</u>

In this Court's March 20, 2018 Memorandum and Order, this Court granted in part and denied in part Defendants' first motions for summary judgment and limited the issue for trial "specific to the events surrounding Plaintiff's application, interview, and rejection for the Crew Supervisor Position." (First Summ. J. Mem. and Order, p. 21, ECF No. 56). In that Memorandum, it was noted that,

> with regards to [the Crew Supervisor] position, Defendants only justified not hiring Plaintiff because they interviewed a better candidate. Parties did not provide evidence that the individual hired was more or less qualified. Therefore, the Court does not have sufficient information to make a determination of whether this constituted a retaliatory or hostile action.

(*Id.* at p. 18).

On June 5, 2018, this Court denied Defendants' motions for partial reconsideration regarding facts about the Crew Supervisor position. (Order, ECF No. 69).

B. <u>Second Summary Judgment Motion</u>

On July 5, 2018, Defendants filed their second motions for summary judgment. (ECF Nos. 71, 72, 73). The County and Compton argued that Plaintiff was not qualified for the Crew

Supervisor position, that Plaintiff failed to sufficiently demonstrate that his protected activity, i.e. his filing of internal complaints, was why he did not obtain the position, and that Plaintiff could not establish a "pattern of antagonism" during the intervening period between his filing internal complaints against Defendants and when he was not selected for the position. (Def.'s Second Mot. for Summ. J. Br. 5-7, ECF No. 71-6). Krzyzanowski maintained that he was not involved in any manner in the interview or selection process for the position. (*See* Def.'s Mot. for Summ. J. Statement of Material Facts 1-2, ECF No. 73-1).

This Court denied the Defendants' second motions for summary judgment after finding that there were factual disputes about Briscoe's qualifications for the Crew Supervisor position and Krzyzanowski's involvement in the hiring process. (Second Summ. J. Memo. and Order, ECF No. 84). Specifically, it was explained that

> Krzyzanwoski's involvement in the hiring is unclear, and the facts are in dispute. While Krzyzanowski argues that he was not involved in the hiring process, he stated in his deposition that he provided a recommendation . . . Based on this factual dispute, a jury may determine Mr. Krzyzanowski was involved. As such, summary judgment is denied.

(*Id.* at pp. 3-4).

Regarding Briscoe's qualifications and candidacy for the Crew Supervisor position, this Court ruled that the facts were "inconsistent" and thus denied summary judgment. (*Id.* at p. 5).

  C. <u>Third Summary Judgment Motion and the Second Lawsuit</u>

Before trial was to commence, Plaintiff filed a motion in limine to exclude about 170 pages of documents regarding the Crew Supervisor position. (*See* Pl.'s Mot. in Limine, ECF No. 98). By way of background, the Documents were not produced during discovery, but Defendants then disclosed the Documents as an attachment to their second motion for summary judgment. (ECF No. 78). Plaintiff objected to the inclusion of the Documents in the second summary judgment

motion as they were not produced during discovery. Evidently, in Plaintiff's initial request for documents, Plaintiff sought "comparator evidence" for any positions which were posted, as Plaintiff was not hired for several positions from 2013 throughout the present in the Maintenance or Buildings and Grounds Divisions. This request included the personnel files for internal candidates, resumes, and interview notes and scores. Defendants objected to the question because they believed it was overbroad. Plaintiff then propounded an amended interrogatory that was more limited. The amended interrogatory demanded information regarding certain positions, but Plaintiff did not mention the Crew Supervisor position. Consequently, Defendants did not disclose any documents relating to that position.

Because of the confusion during discovery, on July 11, 2019, this Court denied Plaintiff's motion in limine based on a lack of production. (Mot. in Limine Mem. and Order, ECF No. 109). A few months later, this Court ruled that Plaintiff was permitted to engage in supplemental discovery, including supplemental interrogatories, document requests, and additional depositions regarding the Crew Supervisor position. (Amended Scheduling Order, ECF No. 112). After the supplemental discovery concluded, Defendants moved for summary judgment for the third time in this lawsuit to further argue the evidence about the Crew Supervisor position.

Moreover, around the time the additional discovery was being conducted, Plaintiff filed another lawsuit[3] against the same Defendants. In this related case, in which fact discovery is nearly complete, Graham alleges that Defendants discriminated and retaliated against him when they dismissed him from his employment.

---

[3] This case is Civil Action No. 19-cv-18763.

III.

Summary judgment is appropriate under Fed. R. Civ. P. 56 when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(a).

A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 93-94 (3d Cir. 2018). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also Ullrich v. United States Secy. of Veterans Affairs*, 457 F. App'x 132, 136 (3d Cir. 2012) ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record."). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R.

Civ. P. 56(e) (requiring the non-moving party to set forth specific facts showing that there is a genuine issue for trial).

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48; *United States ex rel. Greenfield*, 880 F.3d at 93. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor - that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

As relevant in the present case, the summary judgment standard "is applied with added rigor in employment discrimination cases," *Stewart v. Rutgers, State Univ.,* 120 F.3d 426, 431 (3d Cir. 1997) (citation omitted), and "[i]ssues such as intent and credibility are rarely suitable for summary judgment" since they are factual issues to be determined by a jury. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

IV.

To establish a prima facie case of retaliation under Title VII[4], Graham must demonstrate: "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-31 (3d Cir. 2006).

If Graham establishes this prima facie case of retaliation, then the *McDonnell Douglas* framework applies in which "the burden shifts to the employer to advance a legitimate, non-

---

[4] In NJLAD actions for employment discrimination, courts generally follow Title VII precedent. *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016).

retaliatory reason" for its conduct and, if it does so, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore*, 461 F.3d at 342 (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500-501 (3d Cir. 1997)) (internal quotation marks omitted). To survive an employer's motion for summary judgment, Graham must produce some evidence from which a jury could reasonably reach these conclusions. *See Moore*, 461 F.3d at 342; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Similarly, to succeed on a retaliatory hostile work environment claim under Title VII, Graham must show: "(1) [he] suffered intentional discrimination because of [his] protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006); *see Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 309 (D.N.J. 2016).

In this case, Defendants aver that the supplemental discovery clarifies their arguments that Graham was not selected for the Crew Supervisor position for legitimate, non-retaliatory reasons, and that Krzyzanowski had little involvement in the selection process.

First, Compton and the County contend that Compton's supplemental deposition testimony and the candidate scoresheets[5], which include Compton's interview notes, demonstrate that Briscoe, and not Graham, was the most qualified applicant for the position. For example, during his deposition, Compton was asked to recall his reasons for giving Graham and Briscoe their respective scores for their interview questions. (*See* Robert Compton Deposition, 278:1-20; 285:1 – 286:10; 287:1-14; 295:5-16, Oct. 18, 2019, Pl.'s Ex. B, ECF No. 137-4). Compton provided his

---

[5] *See* Roberts Decl., Exs. E and F, ECF No. 118-2.

assessment of Graham's and Briscoe's qualifications for the position based on Compton's recollection of their interview responses as well as his own interview notes. (*See id.*).

Nevertheless, assessing how much weight should be afforded to Compton's explanations for giving Graham and Briscoe their interview scores, along with Compton's opinions of the candidates, are credibility determinations for a jury to decide. *See Wishkin*, 476 F.3d at 185 ("Issues such as intent and credibility are rarely suitable for summary judgment . . . discriminatory intent means actual motive, and is a finding of fact to be determined by the factfinder.").

Moreover, there appears to be evidence that Aaron Kinney, Graham's direct supervisor, has made statements about or has knowledge of how Graham was treated during his employment with the County. (*See generally* ECF No. 97). The exact nature and breadth of Kinney's knowledge about Graham's employment experiences with Defendants has not yet been fully developed, and the Court intends to hear Kinney's testimony before trial to discern any relevant facts of which Kenney may be aware concerning Graham's employment. Accordingly, because Kinney's testimony may be relevant to the outcome of this case, there remain undeveloped factual disputes which warrant against granting summary judgment.

Second, Krzyzanowski argues that the supplemental discovery reveals that he had no involvement whatsoever in the interview process since Compton was solely responsible for interviewing and selecting the candidates for the Crew Supervisor position. In addition, Krzyzanowski asserts that the "recommendation" he provided to Briscoe concerning the position was inconsequential as to why Plaintiff was not selected for the position. (*See* Def.'s Cross Motion for Summ. J. 4-5, ECF No. 120). Krzyzanowski explained in subsequent testimony that,

> The only conversation I had with anybody about that position or any part of the process was when the position was posted, Mr. Briscoe came to me and asked if he should apply for the position. And I recommended that he should apply for the position as I recommend to any of our people to apply to every position that's out

> there. It's good interview skills. It's good that they go through the process with the new people so they're a little less nervous for when the real thing comes up. Rob Briscoe asked me if he should put in for it. I recommended that he should. That's the only conversation I had about that whole process.

(Deposition of David Krzyzanowski, 205:24 – 206:12, Oct. 18, 2019, Ex. A to Adams Cert., ECF No. 120-5).

Despite Krzyzanowski's alleged clarification of his recommendation, his testimony appears to be inconsistent with his prior testimony regarding the nature of the recommendation. As such, Krzyzanowski's most recent testimony does not resolve any issues of fact, and it remains for a jury to determine the level of involvement, if any, Krzyzanowski had in the hiring process, and a jury must assess his credibility.

Overall, Defendants' reasons for denying Graham's application for the Crew Supervisor position are still in dispute. Therefore, Defendants' third summary judgment motions are denied.

## ORDER

This matter, having come before the Court on Defendants' Motions for Summary Judgment (ECF Nos. 118, 120), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 9th day of July, 2020,

**ORDERED** that Defendants' Summary Judgment Motions (ECF Nos. 118, 120) are **DENIED**.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.